UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA VITALE,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

Case No. 16-12654

Sean F. Cox
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 18)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On July 16, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 14, 18). Plaintiff also filed a reply in support of her motion. (Dkt. 19). The cross-motions are now ready for report and recommendation.

B.    Administrative Proceedings

On April 24, 2013, plaintiff filed claims for period of disability, disability

insurance benefits, and supplemental security income, alleging disability

beginning June 7, 2012, which she later amended to March 4, 2013.  (Tr. 11).[1]

The Commissioner initially denied plaintiff's disability application on August 29,

2013.  *Id.*  Thereafter, plaintiff requested an administrative hearing, and on

November 3, 2014, she appeared with counsel before Administrative Law Judge

("ALJ") Patricia S. McKay, who considered her case *de novo*.  (Tr. 28-105).  In a

January 30, 2015 decision, the ALJ determined that plaintiff was not disabled

within the meaning of the Social Security Act.  (Tr. 7-22).  The ALJ's decision

became the final decision of the Commissioner on May 16, 2016, when the Social

Security Administration's Appeals Council denied plaintiff's request for review.

(Tr. 1-6).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings under

Sentence Four.

---

[1] Citations to the Social Security transcript will be identified as "Tr." and the transcript can be found at Docket Entry 10.

## II. FACTUAL BACKGROUND

### A. ALJ Findings

Plaintiff was 38 years old, placing her in the younger age category, on the alleged onset of disability date. (Tr. 20). Plaintiff, a resident of Chesterfield, Michigan, has a high school education and past relevant work as a medical assistant, waitress, stress test technician, and restaurant manager. *Id*. Plaintiff testified that she cannot work due to brain damage, depression, post-traumatic stress syndrome, agoraphobia, photophobia, and migraine headaches. (Tr. 44).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the alleged onset date. (Tr. 13). At step two, the ALJ found that plaintiff had the following severe impairment: general anxiety disorder, depression, organic mood disorder, alcohol dependence and chronic headaches. *Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. (Tr. 14-16). The ALJ determined the following as to plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional contact with supervisors,

coworkers, and the general public, and she is unable to engage in team/tandem duties with coworkers. She is limited to low stress/self-paced work. She is limited to simple, routine, and repetitive work, requiring only simple decisions. She must avoid workplace hazards such as moving machinery, unprotected heights, and climbing of ladders. She can occasionally climb stairs, crouch, crawl, kneel, stoop, or bend.

(Tr. 16). At step four, the ALJ determined that plaintiff could not perform her past relevant work. (Tr. 20). At step five, the ALJ concluded that based on plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed and, therefore, she was not under a disability from the date of the application through the date of the decision. (Tr. 21-22).

B.    Plaintiff's Points of Error

1.    Medical and other opinions

Plaintiff first argues that the ALJ did not provide valid reasons for the various weights of evidence assigned to the medical experts. Specifically, the ALJ gave little weight and vague reasons for not adopting Dr. Anthony Petrilli's opinion and giving it "little weight." (Tr. 19). Plaintiff also finds fault with the ALJ's failure to identify Dr. Petrilli as a neuropsychiatrist and omission of any discussion of his treatment notes. Dr. Petrilli executed a Psychiatric/Psychological Examination Report on 2/6/2014. The report stated that plaintiff suffered from

severe memory and misperceptions. Additionally, extremely poor time perception and management were noted along with severe "mood/ cognitive/ behavioral/deficits." (Tr. 812). Dr. Petrilli also noted that Plaintiff required monitoring by her parents with multiple post-TBI sequelae. Her near death experience was noted in the records. Her GAF was noted to be 35 with a low during the past year stated to be 10. (Tr. 813). The ALJ indicated that a "portion of the opinion is not signed by Dr. Petrilli and this also renders it less persuasive." (Tr. 19). According to plaintiff, it appears that the form was in fact signed but entered into the record in reverse order.

The ALJ indicated that she gave "some" evidentiary weight to the opinions of Linda Kosal. In her report dated 4/30/2015 which was consistent with her treatment records, Dr. Kosal noted bilateral tremors, poor coordination and limitations to standing and walking of less than 2 hours in a workday, as well as an inability to sit less than 6 hours per day. (Tr. 848). Dr. Kosal also noted limitations relating to memory, sustained coordination, following simple instructions, and social interaction. (Tr. 848). Dr. Kosal cited "prior suicide attempts, childlike coping and attention difficulties as reasons for the limitations." (Tr. 848). Plaintiff says that this information was simply not discussed in the decision.

The ALJ gave "no weight" to a 10/30/2014 letter authored by Dr. Donna

Hoban on the bases that the finding of disability is reserved for the Commissioner, and stating that "Dr. Hoban did not outline specific limitations." (Tr. 19). Plaintiff points out that Dr. Hoban was a longterm medical provider. Dr. Hoban stated that plaintiff remained disabled stating the "closed head injury with the concomitant short term memory loss, emotional lability, headaches, and depression have remained. She participates in multiple therapies to date including speech therapy, and psychosocial counseling. These have helped but she remains disabled at this time." (Tr. 892). It should be noted that the ALJ did not address the physical and occupational rehabilitation that plaintiff was performing at the hearing or in the decision.

Plaintiff also contends that the ALJ violated SSR 06-03p relating to medical source statements in assigning less than significant weight to the testimony of Josephine Vitale, plaintiff's mother. The ALJ concluded that there is no evidence in the record that Ms. Vitale, who is a nurse, rendered treatment to plaintiff in a professional capacity. Nor is she a disinterested witness. (Tr. 19). SSR 06-03p specifically explains that other source evidence cannot establish the existence of a medically determinable impairment (i.e. she is not trained to make diagnosis) but the source is important as opinions may be based on "special knowledge of the individual" and may provide insight into the severity of the opinion and how it impacts the individual. SSR 06-3p. Thus, plaintiff says that the ALJ's observation

that there is no evidence of professional treatment is not an appropriate rationale for disposing of the opinion, and to hold otherwise would effectively defeat the point of SSR 06-03p. As to the fact that plaintiff's mother is not disinterested, essentially all opinions in a social security case tend to be interested parties. *See e.g.*, *Allord v. Barnhart*, 455 F. 3d 818, 821 (7th Cir. 2006) (ALJ may not find a witness's testimony not credible simply because the witness is friendly with the claimant). Plaintiff says that Josephine Vitale's testimony is supported by the repeated references to the need for supervision given by a neuropsychologist and other treating physicians which were not discussed in the decision by the ALJ.

According to plaintiff, it is also troubling that the ALJ dismissed the GAF scores thereby effectively eliminating and minimizing plaintiff's contention of cognitive dysfunction, mental health disorders and a closed head injury. According to plaintiff, the rationale set forth is clearly deficient and "boilerplate language." Plaintiff contends the ALJ's articulated rationale simply does not constitute proper reasons for summarily dismissing mental health inpatient admissions and consistent assessments in the "marked" range of functioning. (Tr. 19-20).

2. Credibility

Plaintiff next argues that the ALJ made an impermissible credibility finding by failing to give deference to her consistent and medically supported complaints

of pain.    Plaintiff contends that the ALJ further minimized a nuclear medicine brain scan from 10/15/2013, which revealed "mildly diminished isotope activity at the base of the right cerebellum compared to the left side extending toward the temporal occipital region peripherally."  The scan also revealed, "mildly diminished activity on the right posterior fossa mostly cerebellum, and in the posterior low left frontal or frontal temporal region.  Findings are consistent with diminished metabolism at the sites."  (Tr. 749).  According to plaintiff, the ALJ did not factor these objective findings into her decision.

Plaintiff also argues that the ALJ did not give proper credit to limitations relating to objectively and subjectively manifested medical impairments that was entered into evidence.  The ALJ states that the diagnostic testing did not confirm the presence of a closed head injury.  (Tr. 17).  She also discussed the use of alcohol and the pre-onset date "suggestion" of an abuse of narcotic medications. (Tr. 17-18).   Furthermore, plaintiff avers that the ALJ states that there are inconsistencies in the testimony without referencing where in the record the alleged inconsistencies appear.   Specifically, she appears to compare the testimony given at the hearing to the Disability Report when referencing plaintiff "routinely going to the coffee shop to meet other friends."  (Tr. 18).  The ALJ also questioned plaintiff's claimed difficulty reading, stating that she "was hoping to get a volunteer position reading to small children."  (Tr. 18). The ALJ questioned

Ms. Vitale's credibility on the basis that she was able to file a teleclaim. (Tr. 18). According to plaintiff, this is indicative of extreme bias on the part of Judge McKay as filing a teleclaim is arguably the least complicated means to file a claim for benefits. Going into the office to meet with a Social Security Representative or completing an online application would clearly indicate a higher level of functioning especially for someone with compromised cognitive functioning.

Next, plaintiff says that the ALJ makes brief mention of her daily activities without incorporating her explanation that she cooked and performed basic activities at a slower pace in order to maintain cognitive functioning. (Tr. 18). According to plaintiff, the ALJ fails throughout the decision to discus the need for supervision, monitoring, physical rehabilitation and vocational rehabilitation.

Plaintiff maintains that the ALJ never factored the full scope of her medical and mental conditions into her RFC determination. Plaintiff also says the ALJ did not assess such factors as medication side effects, and daily activities. She also contends that pain symptoms were not sufficiently discussed in the decision - though they clearly are a bar to full time employment. Nor did she evaluate whether the claimant is capable of a competitive work schedule i.e. 8 hour day, 40 hour week, as required by SSR 96-8p. Plaintiff says the ALJ failed to take her mental health and cognitive functioning positions consideration. The ALJ repeatedly states that there is no "objective" evidence of the psychiatric condition

in dismissing the treating physician opinions. Plaintiff points out that there are no possible objective signs of the bipolar and depression conditions, and the longitudinal treatment clearly supports the existence of severe cognitive impairments which the treating physicians deemed to be disabling with a need for ongoing supervision and cognitive therapies. *Blackenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989).

Finally, plaintiff also points out that the ALJ did not discuss some of the medical examiners in her decision. On 4/29/2013 neurologist Thomas Giancarlo, D.O. prescribed outpatient speech and cognitive therapy with a diagnosis/impression of "[C]losed head injury with post-traumatic headaches, 2. Post traumatic cognitive dysfunction." (Tr. 654-655). On 10/27/2013 Wahed Ishaqsei, M.D. further examined plaintiff and reported an impression of post traumatic stress disorder, major depressive disorder with suicidal ideation, dyslipidemia, elevated anion gap, and severe headache in an inpatient hospitalization that revealed a GAF Score of 15. (Tr. 829)

C.    Commissioner's Motion for Summary Judgment

1.    Medical and other opinions

According to the Commissioner, the ALJ gave substantial reasons for assigning more weight to the opinions of Drs. Kuiper, Csokasy, Boneff, and Kosal than to the opinions of Dr. Petrilli, Dr. Hoban, and Ms. Vitale. Plaintiff's

argument that the ALJ failed to identify Dr. Petrilli as a neuropsychiatrist is unavailing. *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804-05 (6th Cir. 2011) (the regulations do not require an exhaustive factor-by-factor analysis). Dr. Petrilli's specialization, though relevant, does not rescue his opinions from the serious deficiencies that the ALJ identified. *See Matelski v. Comm'r of Soc. Sec.*, 1998 WL 381361, at *5 (6th Cir. June 25, 1998) ("[N]o single factor [in 20 C.F.R. §§ 404.1527(c), 416.927(c)] is necessarily dispositive."). According to the Commissioner, Dr. Petrilli's assessment of marked mental limitations in every category is flatly inconsistent with: (1) plaintiff's daily activities (e.g., Tr. 240-43, 734, 766-71, 815); (2) examinations in which she reported symptoms of depression, but showed only mild cognitive deficits (e.g., Tr. 390-91, 734-35, 825); and (3) the fact that her doctor and therapist believed she was capable of doing volunteer work that would require her to be around children for several hours at a time (e.g., Tr. 55-56, 89).

Regarding plaintiff's challenge to the ALJ's conclusion that Dr. Petrilli's questionnaire was less persuasive because portions were unsigned, the Commissioner says her argument fails for two reasons: First, the pages are out of order, as she states, but the ALJ was still correct in observing that a portion of the report was unsigned. The final page of the questionnaire includes a space for Dr. Petrilli's signature, but he left it blank (Tr. 811). It appears that someone signed

the narrative discussion at the bottom of that page, but the signature does not match Dr. Petrilli's signature on page 2 of the questionnaire. (Compare Tr. 810, with Tr. 811). Second, the ALJ properly rejected Dr. Petrilli's opinions because they were poorly supported, inconsistent with other substantial evidence, and conclusory. (Tr. 19). Thus, even if the ALJ had erred with respect to the signature, it would not have detracted from her other good reasons for giving the opinions little weight. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (acknowledging that harmless-error principles apply to the ALJ's evaluation of treating physician opinions).

Responding to plaintiff's claim that the ALJ erred in failing to discuss Dr. Kosal's report documenting tremors, balance problems, prior suicide attempts, childlike coping skills, and attention deficiencies (Dkt. 14 at 28, citing Tr. 848), the Commissioner points out that the ALJ was not required to recite every finding in Dr. Kosal's report. *See Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). According to the Commissioner, the ALJ expressly considered plaintiff's October 2013 hospitalization and reported problems with balance, attention, and memory, but properly juxtaposed them against evidence that plaintiff's alleged symptoms did not prevent her from filling out disability forms, driving, taking care of puppies, dating, doing Pilates,

cooking, cleaning, gardening, doing laundry and dishes, shopping, bowling, using the computer, watching television, volunteering, visiting friends and relatives, dining out, and going to the movies.  (Tr. 15, 18; see, e.g., Tr. 240-43, 734, 766-71, 815); *see Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that [the claimant's] subjective complaints were not credible in light of her ability to perform other tasks.").

The Commissioner maintains that the ALJ was not required to credit Dr. Hoban's conclusory disability statements merely because she was a "longterm medical provider."  Rather, under the controlling regulations, conclusory statements that a claimant is "disabled" or "unable to work" are not "medical opinions," and are not entitled to any particular weight.  20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *5; *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").

Next, the Commissioner asserts that plaintiff's challenge to the ALJ's evaluation of the GAF scores also lacks merit because a GAF score is merely a "snapshot of a person's level of functioning at a given moment in time," *Jordan v. Comm'r of Soc. Sec.*, 2011 WL 891198, at *5 (E.D. Mich. Jan. 14, 2011), and there is no direct correlation between an individual's GAF score and her ability to work.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir.

2006).  According to the Commissioner, plaintiff has not shown that her GAF

scores during periods of hospitalization require greater RFC restrictions,

particularly where she received scores of 50, 55, and 60 at other times (e.g., Tr.

389, 392, 735); *see Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. Appx. 468, 470

n.1 (6th Cir. 2016) (affirming denial of benefits where claimant had GAF scores

ranging from 25 to 55, and noting that the Commissioner does not endorse the use

of GAF scores); *Holzworth v. Comm'r of Soc. Sec.*, 2013 WL 4496251, at *8 (E.D.

Mich. Aug. 21, 2013) (substantial evidence supported the ALJ's decision where he

acknowledged GAF scores ranging from 20 to 59, and explained that the low

scores occurred during an isolated event when the claimant was hospitalized for

substance abuse).

Finally, the Commissioner asserts that plaintiff is not entitled to remand

based on the ALJ's observation that Ms. Vitale was not impartial.  The ALJ was

entitled to "give less weight to the testimony of interested witnesses."  *Hamper v.*

*Comm'r of Soc. Sec.*, 714 F.Supp.2d 693, 706 (E.D. Mich. 2010); *see also Spillers*

*v. Colvin*, 2016 WL 867635, at *11 (M.D. Tenn. Jan. 29, 2016) ("The regulations

do not require the ALJ to ignore the relationship between a claimant and a family

member."); SSR 06-03p, 2006 WL 329939, at *6 (in considering evidence from

relatives, "it would be appropriate to consider such factors as the nature and extent

of the relationship").  In any case, the Commissioner says that the ALJ did not

reject Ms. Vitale's testimony solely because of her relationship to plaintiff. Rather, her primary reason for discounting the testimony was that it was "simply not consistent with the preponderance of the opinions and observations" in the record. (Tr. 19).

### 2. Credibility

Next, the Commissioner maintains that the ALJ properly discounted plaintiff's statements regarding the severity and limiting effects of her pain and closed head injuries. The ALJ acknowledged that plaintiff had impairments capable of producing her reported symptoms, but supportably found that those symptoms were not quite as severe as alleged. (Tr. 16-17). She gave numerous and substantial reasons for discounting plaintiff's allegations, as outlined above (Tr. 13-20); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."); SSR 96-7p, 1996 WL 374186, at *5-8 (July 2, 1996) (discussing relevant credibility factors, e.g., the consistency of claimant's complaints with objective medical evidence, other statements she has made, the level of treatment and whether it has been successful, reported daily activities, and other information in the record). First, plaintiff contends that reversal is warranted because the ALJ did not discuss the October 2013 brain SPECT showing slightly diminished

metabolism at two sites, even though plaintiff does not explain the significance of this finding. Nevertheless, even assuming for the sake of argument that the study supports a finding that TBI was a medically determinable severe impairment, plaintiff is not entitled to remand because she has failed to identify any specific TBI-related symptoms of which the ALJ failed accommodate in her RFC assessment. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition.").

The ALJ acknowledged that plaintiff experienced chronic headaches and an organic mood disorder stemming from her March 2013 fall, and she accounted for the credible symptoms of those impairments by restricting plaintiff to a very narrow range of jobs. (Tr. 13-20). The Commissioner asserts that the ALJ's finding that the record contained insufficient support for a diagnosis of "closed head injury," is of no consequence inasmuch as a diagnosis is merely a label for a particular set of signs and symptoms. Furthermore, plaintiff has not explained why simply giving a new name to the same reported symptoms would compel a finding that she is disabled. In short, the ALJ assessed an RFC that reasonably accommodates the sequelae of plaintiff's March 2013 accident, regardless of whether those limitations stem from a "closed head injury," TBI, organic mood disorder, residual headaches, or some other condition(s). *See Pompa v. Comm'r of*

*Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003) ("Because the ALJ found that [claimant] had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). The Commissioner also points out the ALJ's decision to discount plaintiff's self-reported limitations was based not on a belief that plaintiff did not have a significant impairment, but rather on the fact that her complaints of debilitating symptoms and limitations were inconsistent with substantial evidence in the record, including her documented improvement with treatment and her "very active" lifestyle.

Second, plaintiff argues that the ALJ should not have relied on the fact that she managed to file a teleclaim, because that "is arguably the least complicated means to file a claim for benefits." The Commissioner acknowledges that may be true, but asserts that this activity still evidences plaintiff's ability to manage that straightforward task is noteworthy given her reports of cognitive limitations so debilitating that she could not read properly, follow simple directions, or talk on the phone. (Tr. 50, 59, 64-65, 244). Likewise, her ability to read, understand, and complete Work History and Function Reports directly undermines Dr. Petrilli's opinion that she had marked limitations in every area of functioning, including the ability to understand, remember, and carry out simple one or two-step instructions. (Tr. 230-46; see Tr. 809-10).

Finally, as to plaintiff's complaint that the ALJ did not discuss her testimony that she performed activities at a slower pace and required supervision, the Commissioner counters that the ALJ did discuss plaintiff's qualifying statements about her level of activity. (Tr. 15 ["She prepares complete meals daily, although she stated it takes longer because she forgets what she is doing."]. Further, the Commissioner maintains that the ALJ was not required to credit plaintiff's self-serving testimony in the face of other evidence reflecting no such limitations. *Crum*, 921 F.2d at 644 (the ALJ is responsible for resolving evidentiary conflicts).

According to the Commissioner, plaintiff's argument challenging the RFC assessment is essentially a rehashing of her argument that the ALJ improperly weighed the evidence. Because that argument fails, the Commissioner argues that the Court should reject plaintiff's corollary argument that the ALJ's RFC assessment did not accurately portray her limitations.

The Commissioner maintains that the record belies plaintiff's argument that "[s]uch factors as medication side effects, daily activities, and pain symptoms were not sufficiently discussed in the decision and clearly are a bar to full time employment." The Commissioner points out that plaintiff explicitly testified at the November 2014 hearing that her current medications did not cause any side effects. (Tr. 65). Additionally, the ALJ noted that, in July 2014, plaintiff reported

that Effexor and Xanax provided relief without side effects (Tr. 17, citing Tr. 865).

Furthermore, the ALJ discussed plaintiff's daily activities at length in the decision,

and those activities seriously undermine Plaintiff's complaints of debilitating

symptoms.  More particularly, the Commissioner maintains that the ALJ properly

weighed plaintiff's claims that she could not be around people and rarely left her

room against her wide range of daily activities, which—again—included driving,

taking care of two puppies, dating, doing Pilates, cooking, cleaning, gardening,

doing laundry and dishes, shopping, going bowling, using the computer, watching

television, volunteering at a children's hospital, visiting friends and relatives,

dining out weekly, and going to the movies monthly.  (Tr. 36-37, 56-57, 240-43,

734, 766-71, 815).  Third, although plaintiff now alleges disabling pain in her

brief, during her hearing she testified that her renal function was restored (Tr. 44),

that Botox provided significant headache relief (Tr. 60, 64), and that the primary

basis of her disability claim was not pain, but rather her self-report of "brain

damage in four different places" with associated depression and anxiety.  (Tr. 44).

Lastly, the Commissioner contends that plaintiff's argument challenging the

ALJ's rejection of certain medical opinions on plaintiff's limitations are, in reality,

requests for the Court to establish a new rule minimizing the role of objective

evidence in evaluating psychiatrists' opinions.  Plaintiff insists that "there are no

possible objective signs of the bipolar and depression conditions to be

established." The Commissioner points out that the pertinent regulations provide that opinions supported by objective clinical findings are entitled to greater weight than those that are not. *See* 20 C.F.R. §§ 404.1527(c)(2)-(3), 416.927(2)-(3). There is no exception for psychiatric opinions, as plaintiff appears to suggest. *See* 20 C.F.R. §§ 404.1528(b), 416.928(b) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated."). To support her view, plaintiff cites *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989), where the court acknowledged the relative difficulty of substantiating psychiatric impairments due to the imprecision of psychiatric methodology. The Commissioner contends that while *Blankenship* does state that psychiatric impairments are "not as readily amenable to substantiation," plaintiff's claim that they generate "no possible objective signs" is simply a bridge too far. Also, the ALJ here did not discount Dr. Petrilli's proposed limitations based solely on "the relative imprecision of the psychiatric methodology or the absence of substantial documentation"—which would be improper under *Blankenship*. 874 F.2d at 1121. Rather, the ALJ had "other reasons to question" the opinions, including: (1) an objective examination showing very mild cognitive limitations; (2) psychologists' opinions that plaintiff

could follow simple instructions and interact appropriately with others; and (3)

Plaintiff's documented ability to do a host of activities that directly undermine Dr.

Petrilli's opinions. *See id*. at 1121. In any case, even if the Court were to accept

Plaintiff's position that the absence of supportive objective signs is immaterial, the

Commissioner says plaintiff fails to account for the objective findings and other

evidence affirmatively showing that she could perform physical and mental tasks

that exceed her self-reports. (see, e.g., Tr. 240- 43, 734, 766-71, 815; Tr. 734-35).

## III.  DISCUSSION

### A.  Standard of Review

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in

substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding ruling out disabled status, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. These

reasons must be supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Once an ALJ has determined that a treating source opinion is not entitled to

controlling weight, the ALJ must apply specific factors to resolve the question of

what weight will be assessed. Those factors include, (1) the length of the

treatment relationship and frequency of examination, (2) the nature and extent of

the treatment relationship, (3) supportability of the opinion, (4) consistency of the

opinion with the record as a whole, and (5) the specialization of the treating

source. *Id.; see also Wilson,* 378 F.3d at 544. Failure to analyze a treating source

opinion under the two-prong controlling weight test amounts to the failure to

provide good reasons for giving that opinion less than controlling weight.

*Gayheart* at 376-77.

> This requirement is not simply a formality; it is to
> safeguard the claimant's procedural rights. It is intended
> "to let claimants understand the disposition of their
> cases, particularly in situations where a claimant knows
> that his physician has deemed him disabled and therefore
> might be especially bewildered when told by an
> administrative bureaucracy that [ ] he is not.
> Significantly, the requirement safeguards a reviewing
> court's time, as it "permits meaningful" and efficient
> "review of the ALJ's application of the [treating
> physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted). "This circuit 'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart,* 710 F.3d at 380 (quoting *Cole,* 661 F. 3d at 939).

           1.     Opinions of Dr. Petrilli

Here, plaintiff objects to the way the ALJ assessed the opinions of Dr. Petrilli, Dr. Kosal, and Dr. Hoban. The ALJ gave Dr. Petrilli little weight for several reasons. First, the ALJ found that the medical evidence of record and plaintiff's daily activities did not support the marked limitations identified by Dr. Petrilli. Second, the ALJ said plaintiff did not have a significant durational treatment with Dr. Petrilli, and the opinion was not consistent with plaintiff's overall functioning or the medical evidence. Additionally, the ALJ rejected Dr. Petrilli's opinion that plaintiff is "disabled" because that is an issue reserved to the Commissioner, and not entitled to any weight. The ALJ also found that Dr. Petrilli's failure to sign a portion of the opinion made it "less persuasive." (Tr. 19).

After concluding that Dr. Petrilli's opinions were not entitled to controlling weight, the ALJ moved on to the "good reasons" analysis for determining the appropriate weight to be given to Dr. Petrilli's opinions. Yet, the undersigned is not persuaded that the ALJ properly applied the controlling weight test because

the decision does not follow the initial two-pronged analysis articulated by the Sixth Circuit in *Wilson* and *Gayheart*. First, the decision does not discuss whether Dr. Petrilli's opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and second, though it adverts to the same, it does not properly assess their inconsistency with other substantial evidence. *Id.* Instead, without citing any records other than Dr. Petrilli's own opinions (Tr. 809-813), the ALJ flatly states, "[m]edical evidence of record and claimant's activities of daily living do not support marked limitations...and the opinion is not consistent with the claimant's overall functioning or the medical evidence." (Tr. 19). It is unclear from these statements under which of the two prongs the ALJ found Dr. Petrilli's opinions deficient.

This case is similar to *Gayheart*, *supra*, in that the ALJ there also concluded that the treating physician opinions were not well-supported by any objective findings. On appeal, the Sixth Circuit determined that the ALJ's decision in that regard was ambiguous. The Court explained that it could not "determine whether the purported problem is that the opinions rely on findings that are not objective (i.e. not the result of medically acceptable clinical and laboratory diagnostic techniques), *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions." *Gayheart*, 710 F.3d at 377. The *Gayheart* court also rejected the ALJ's conclusion that the opinions of

nontreating and nonexamining doctors constituted "substantial evidence" supporting the decision to withhold controlling weight from treating physician opinions. As the Sixth Circuit observed, it would make no sense to withhold controlling weight from a treating physician's opinion based on the contrary opinions of nontreaters:

> [O]therwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id*. at 377. Consequently, the ALJ cannot use conflicting opinions of non-treaters to create substantial evidence in support of a conclusion that the treating physician opinions were not entitled to controlling weight.

Similarly, here it is impossible to tease out a properly analyzed reason for the ALJ's decision to withhold controlling weight to the opinions. The decision's lack of a clear, cohesive, and substantive analysis under the two-prong controlling weight test necessarily amounts to a failure to provide good reason for discounting the opinion's weight, which compels a remand. *See Gayheart*, 710 F.3d at 376. The ALJ did attempt to give good reasons for the weight ultimately assessed to Dr. Petrilli's opinions, in accordance with her obligation to "determine how much

weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *13 (E.D. Mich. Sept. 13, 2013) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). Yet, the ALJ still bypassed the critical question presented in the first part of the *Gayheart* test: Whether Dr. Petrilli's opinion was "well supported by clinical and laboratory diagnostic techniques."

As explained in *Lee v. Colvin*, 2016 WL 552698, at *5 (S.D. Ohio Feb. 12, 2016), report and recommendation adopted, 2016 WL 882100 (S.D. Ohio Mar. 1, 2016), in failing to address this specific question, the ALJ erred because he weighed the treating physician opinion under the same legal criteria applicable to non-treating medical sources' opinions. According to *Lee v. Colvin*, doing so is legal error "because it directly conflicts with the different legal criteria applicable to different types of medical sources in the regulation's medical-source hierarchy." *Id.*

Additionally, as discussed, while the ALJ stated that Dr. Petrilli's opinions were inconsistent with the medical evidence, the decision itself does not make clear what medical evidence was relied on for this conclusion. (Tr. 19). The Commissioner attempts to buttress the ALJ's conclusion by positing that Dr.

Petrilli's assessment of marked mental limitations in every category is inconsistent with: (1) plaintiff's daily activities (e.g., Tr. 240-43, 734, 766-71, 815); (2) examinations in which she reported symptoms of depression, but showed only mild cognitive deficits (e.g., Tr. 390-91, 734-35, 825); and (3) the fact that her doctor and therapist believed she was capable of doing volunteer work that would require her to be around children for several hours at a time (e.g., Tr. 55-56, 89). However, the scant medical evidence on which the Commissioner relies in making this argument is less than availing. Specifically, the Commissioner points to: (1) a therapist's notes (Tr. 390-91); (2) a consulting psychologist (not a medical doctor) who concluded that plaintiff had mild short term memory issues related to her closed head injury - which the ALJ concluded she did not have (Tr. 734-735); and (3) a single notation from a resident physician during plaintiff's hospital stay in a psychiatric unit (Tr. 825-826). The contents of the cited medical record references fall short of mitigating the ALJ's failure to assess Dr. Petrilli's opinions under the controlling weight standard. Indeed, the Commissioner's explanation appears to be a *post-hoc* rationalization of the ALJ's treating physician assessment. *See Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (The court "may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v.*

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 (1983)); *Hyatt Corp. v.*

*N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate

on the basis of an administrative agency's order.... The court is not free to accept

'appellate counsel's post hoc rationalization for agency action in lieu of reasons

and findings enunciated by the Board.'").

Plaintiff also challenges the ALJ's decision for its failure to note that Dr.

Petrilli has a specialty in neuropsychiatry, as this is one of the factors to be

considered in the second part of the *Gayheart* test. *Johnson v. Comm'r of Soc.*

*Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) ("When the physician is a specialist with

respect to the medical condition at issue, . . . her opinion is given more weight than

that of a non-specialist."). While this omission alone may not be a sufficient

reason to remand, it should be considered on remand when the ALJ reconsiders

Dr. Petrilli's opinion for controlling weight under the first part of the *Gayheart*

analysis. The Commissioner rightly points out that the ALJ was not required to

give any weight to Dr. Petrilli's opinion that plaintiff is "disabled." However, the

Court's validation of the decision on that point does not cure the other defects in

the analysis.

Finally, the undersigned finds that the ALJ's treatment of Dr. Petrilli's

opinion is not harmless. A violation of the good reasons rule may be harmless

error if, "(1) a treating source's opinion is so patently deficient that the

Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *14 (E.D. Mich. Sept. 13, 2013) (citing *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010)). None of the harmless error factors apply here. Dr. Petrilli's opinions are not patently deficient. His opinions are based on his treatment of plaintiff's traumatic brain injury, and note that she requires further physical therapy, occupational therapy and other medical follow-up for the condition, (Tr. 811). Furthermore, Dr. Petrilli provided narrative support for his opinions based on his examination of her. (Tr. 812-13). Thus, the undersigned does not find this opinion so lacking in support that it could not possibly be credited.

## 2. Opinions of Dr. Kosal

The ALJ similarly offered little explanation for discounting the opinions of Dr. Kosal who was also a treating physician. The ALJ did not conduct any analysis regarding whether Dr. Kosal's opinions were entitled to controlling weight, and simply rejected her opinion that plaintiff could only work on a part-time basis as "not supported by, nor consistent with the objective medical evidence of record, including diagnostic and clinical findings." (Tr. 19). Yet, the

undersigned is unable to discern the basis for the ALJ's treatment of this opinion

from the decision. The Commissioner does not really address why the ALJ did

not have to assess this opinion under the applicable treating physician standards.

Rather, the Commissioner merely conducts another post-hoc analysis regarding

why the opinion is not supported and why the ALJ did not have to mention all

findings made by Dr. Kosal in her opinion. Considering that Dr. Kosal's opinions

are not obviously deficient, the ALJ's analysis of Dr. Kosal's opinions is plainly

lacking under *Gayheart*.

The undersigned does not find any error with respect the ALJ's treatment of

Dr. Hoban's opinions. (Tr. 892). Dr. Hoban, while providing narrative

information about plaintiff's condition, did not provide any opinions regarding

plaintiff's functional limitations. She merely indicated that plaintiff is "disabled"

and the ALJ correctly concluded that a finding of disability is reserved to the

Commissioner as such an opinion is not a medical opinion. (Tr. 19).

Based on the foregoing, the undersigned recommends that this matter be

remanded under Sentence Four for further evaluation of the treating physician

opinions of Dr. Petrilli and Dr. Kosal. In making this further evaluation, the ALJ

should reconsider the testimony of plaintiff's mother in accordance with *Lashley*

*v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir.1983)

("Perceptible weight must be given to lay testimony where ... it is fully supported

by the reports of the treating physicians.").  Notably, plaintiff's credibility will necessarily have to be reassessed in conjunction with the new evaluation of her treating physicians' opinions on remand.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 1, 2017

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on September 1, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov